UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CARLOS JEREZ,<br>　　Plaintiff,<br><br>　　v.<br><br>RHODE ISLAND AIRPORT<br>CORPORATION,<br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 1:25–cv–00269–MSM–PAS<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the defendant Rhode Island Airport Corporation's ("RIAC") Motion to Dismiss (ECF No. 14.) The plaintiff Carlos Jerez's Second Amended Complaint (ECF No. 12) alleges RIAC racially discriminated and retaliated against him during his employment at RIAC. For the following reasons, RIAC's Motion to Dismiss is GRANTED in its entirety.

I.　　BACKGROUND

Mr. Jerez identifies as Hispanic and works for RIAC's police department. *Id.* at 1. He alleges two core instances of unfair treatment by RIAC. *Id.* at 2–4. First, he claims that RIAC assigned new vehicles to other, less senior officers. *Id.* at 2. Second, he alleges that RIAC unfairly failed him during an oral examination for a sergeant position. *Id.* 2–4. Specifically, he claims that RIAC unjustly refused to give him a list of the topics that would be covered in the oral examination, in contrast with candidates for a separate lieutenant position, whom he alleges were all Caucasian

and were all provided with the topics that were to be covered in the oral examination for that position. *Id.* at 3. Mr. Jerez does not claim that RIAC provided the oral examination topics to any other candidates for the sergeant position. *See id.*

Mr. Jerez also claims that (1) after the oral examination took place, the RIAC Chief of Police reportedly falsely told a fellow member of the panel that assessed Mr. Jerez's performance that Mr. Jerez had been given study materials for the oral interview; (2) one of the panel members told Mr. Jerez that he had done well; (3) another employee told Mr. Jerez that the Chief of Police had given him a lower score than other panel members; (4) the Chief of Police reportedly told one of RIAC's officers that he did not want to promote Mr. Jerez because Mr. Jerez "didn't command the respect of the men"; and (5) RIAC refused Mr. Jerez's requests for information about how the panel had graded him. *Id.* at 4–5. According to records attached by RIAC to its Motion to Dismiss, however, Mr. Jerez did not achieve the requisite composite score of 70 to be eligible for promotion to the sergeant position because three of the four other examiners failed him. *See* ECF No. 14-2. Mr. Jerez presents no direct evidence of racial discrimination or any other allegedly discriminatory acts by RIAC.

Mr. Jerez's retaliation claims appear to stem from the reassignment of his K9, in January 2024. *See* ECF No. 12 at 5. According to Mr. Jerez, after he had been ordered out of work by his doctor pending surgery, RIAC's Chief of Police had Mr. Jerez's assigned K9 and its housing removed from Mr. Jerez's house, despite Mr. Jerez remaining assigned to the K9 unit. *Id.* Mr. Jerez alleges that this impaired his ability to fulfill his position at RIAC after he returned to work. *Id.* Mr. Jerez received

2

a new K9 assignment five months later, allegedly sometime after the Chief of Police resigned. *Id.*

On July 6, 2024, Mr. Jerez filed a Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR"), alleging that RIAC discriminated against him on the basis of race, color, national origin, and age when it failed to promote him to the sergeant position. (ECF No. 14-3 at 4–6.) Mr. Jerez did not allege any facts in that Charge related to the removal of his assigned K9. *See id.* Mr. Jerez subsequently filed suit, alleging in his Second Amended Complaint racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 *et seq.* ("FEPA"). (ECF No. 12 at 6–8.)

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must set forth a "plausible claim." That means the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009). The reviewing court must assume the truth of all "well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir. 2008).

3

### III.  DISCUSSION

#### A.  Mr. Jerez's Discrimination Claims

It is "routine practice" for courts to analyze claims under Title VII and FEPA together. *Ferro v. R.I. Dept. of Transp. ex rel. Lewis*, 2 F. Supp. 3d 150, 157 (D.R.I. 2014); *see also Ferreira v. Child and Fam. Services*, 222 A.3d 69, 77 (R.I. 2019) ("This Court has also previously adopted the legal framework employed by the federal courts when considering these claims."). Where there is a lack of direct evidence of discrimination, "[t]he familiar *McDonnell Douglas* burden-shifting framework applies to [a plaintiff's] disparate treatment claims." *Ripoli v. R.I. Dep't of Hum. Servs.*, 123 F.4th 565, 571-572 (1st Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). "Under that framework . . . a prima facie case of discrimination requires the plaintiff to establish that she was a member of a protected class, that she was qualified for the job, that she suffered an adverse employment action, and that the adverse employment action transpired under circumstances giving rise to an inference of discrimination." *Id.* (citing *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019)).

Once the plaintiff has established a prima facie case, "burden of production shifts to the defendant, who must provide a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 572 (citing *Boykin v. Genzyme Therapeutic Prods., LP*, 93 F.4th 56, 60 (1st Cir. 2024)). Thereafter, "the burden reverts to the [plaintiff] to produce evidence sufficient to show that the [defendant's] articulated

4

reason for [terminating] her was not its real reason but, rather, was merely a pretext for discrimination." *Id.* at 574 (citing *Boykin*, 93 F.4th at 60).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "All that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994). "However, it is important to remember that the contours of a prima facie case are flexible and situation-specific." *Id.*

Here, the adverse employment action at the heart of Mr. Jerez's discrimination claim appears to be RIAC's denial of his application for promotion to a sergeant position. Mr. Jerez, however, fails to allege sufficient facts to meet his prima facie burden of showing both that he was qualified for the position and that his withheld promotion transpired under circumstances giving rise to an inference of discrimination.

First, Mr. Jerez's Second Amended Complaint does not contain any non-conclusory assertions suggesting that he was actually qualified for the position. It is undisputed that Mr. Jerez failed the requisite oral examination. Although Mr. Jerez states in his Second Amended Complaint that he "believed that he performed well" during the examination, (ECF No. 12 at 3), nowhere does he clearly assert that he would have passed the oral examination (and therefore been qualified for the position) but for RIAC's racial discrimination against him, and he identifies no other

5

factual evidence—other than his performance on the written portion of the exam—suggesting that he was otherwise qualified.

Instead, Mr. Jerez appears to imply that his failure during the oral examination was the result of bias by the Chief of Police. *See* ECF No. 12 at 4. But even when viewed in the light most favorable to Mr. Jerez, the facts that he produces in support of this implication—including the assignment of a pair of new vehicles to other, less-senior employees, the provision of exam topics to other employees in preparation for an entirely different position's qualifying examination, and the Chief of Police's statement that Mr. Jerez "didn't command the respect of the men"—do not give rise to a reasonable inference that any bias by the Chief of Police against Mr. Jerez was racially-motivated. Thus, even if Mr. Jerez was qualified for the position, he has failed to allege sufficient facts suggesting that his withheld promotion "transpired under circumstances giving rise to an inference of discrimination." *Ripoli*, 123 F.4th at 571-572.

Further, as noted by RIAC, two out of the three other panel members participating in the oral examination also failed Mr. Jerez, such that even were the Chief of Police's evaluation to be removed Mr. Jerez would still have failed the examination. *See* ECF Nos. 14-2; 14 at 12–13. When ruling on a motion to dismiss, the Court is ordinarily forbidden from considering documents that are neither attached to nor expressly incorporated into a Complaint, *see* Fed. R. Civ. P. 12(b)(6), but an exception exists " for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for

6

documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). While Mr. Jerez "does not admit to the authenticity" of the oral exam scores and argues that they are not central to his claims, *see* ECF No. 16 at 9, the scores are logically central to Mr. Jerez's implication that, but for the Chief of Police's bias against him, he would have passed the oral examination and thus been qualified for the sergeant position. Additionally, Mr. Jerez sufficiently refers to the oral examination scores in his Second Amended Complaint by specifically alleging differences in the scores given to him by the Chief of Police and the other panel members. *See* ECF No. 12 at 4. Consequently, the Court finds consideration of the oral exam scores to be appropriate and concludes that they further undermine Mr. Jerez's prima facie case.

In summary, Mr. Jerez has failed to sufficiently allege that he was both qualified for the sergeant position and that the denial of his promotion to that position occurred under circumstances giving rise to a reasonable inference of discrimination. Thus, even evaluated in the light most favorable to him, his Second Amended Complaint fails to state a claim for racial discrimination against RIAC.

B.    **Mr. Jerez's Retaliation Claims**

Mr. Jerez's retaliation claims fail at the threshold because he did not exhaust administrative remedies with respect to those claims. *See Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017) ("As a condition precedent to bringing a claim under Title VII, the claimant must first exhaust his or her administrative remedies."). In this case, Mr. Jerez did not allege any retaliation claims in his Charge of

Discrimination filed with the Rhode Island Commission for Human Rights, as normally required as a precondition to suit. *See* ECF No. 14-3 at 4–6; *see also Plunkett v. State*, 869 A.2d 1185, 1191 (R.I. 2005) ("[B]oth the federal and state statutory schemes require that a [plaintiff] obtain a right-to-sue letter from the applicable commission prior to filing a complaint for damages.") While an exception to this requirement may apply where the retaliation complained of "is reasonably related to and grows out of the discrimination complained of to the agency—*e.g.*, the retaliation is for filing the agency complaint itself," *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001), Mr. Jerez's alleged retaliation claim—the reassignment of his K9—is based on actions taken place prior to his filing with the Rhode Island Commission for Human Rights and as such cannot have been the result of his filing that Charge.

As such, because Mr. Jerez failed to exhaust administrative remedies with respect to his retaliation claims, those claims must also be dismissed. As his retaliation claims are time-barred because they were not filed with the Rhode Island Commission for Human Rights within one year of the alleged retaliation, *see* 515 R.I. Code. R. 10-00-2.4(E), this dismissal is with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, RIAC's Motion to Dismiss (ECF No. 14) is GRANTED in its entirety.

IT IS SO ORDERED

_____
Mary S. McElroy
United States District Judge

November 4, 2025